Fulvio F. Cajina (SBN 289126)
LAW OFFICE OF FULVIO F. CAJINA
311 Oak Street
Suite 108
Oakland, CA 94607
Tel: (415) 601-0779
Fax: (510) 225-2636
Email: fulvio@cajinalaw.com

Attorneys for Plaintiff HENRY MCKENZIE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

-San Francisco-

| | |
|---|---|
| HENRY G. MCKENZIE,<br><br>                  Plaintiffs,<br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; GEORGE GASCON; JERRY RODRIGUEZ; DAVID CREW; and DOES 1-10.<br><br>                  Defendants. | Case No.: 3:18-cv-7141<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. California Labor Code § 1102.5 and 6310 violations against all Defendants;<br>2. 42 U.S.C. § 1983 against all Defendants (First Amendment Violation);<br>3. FEHAViolations/Title VII Violations – Age discrimination against CCSF;<br>4. FEHA - Failure to Take Reasonable Steps against CCSF;<br>5. Defamation.<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Amount in controversy exceed $75,000** |

COMES NOW, Plaintiff HENRY G. MCKENZIE and hereby alleges and avers the following based upon personal knowledge as to facts known to him and upon information and belief as to all other matters against Defendants CITY AND COUNTY of SAN FRANCISCO; GEORGE GASCON; JERRY RODRIGUEZ; DAVID CREW and DOES 1-10 as follows:

# I. INTRODUCTION

1.      This is a case of utmost public concern. On or about 2017, several executive members of the San Francisco District Attorney's Office Investigators Association (the "Union") discussed the need to blow the whistle on potential criminal violations by the Office of the District Attorney. Specifically, the Union's executive members, including Plaintiff HENRY G. MCKENZIE, a senior investigator in the Office of the District Attorney and member-at-large for the association, discussed allegations that Defendant GEORGE GASCON, the District Attorney, had traveled on many occasions by plane while carrying a firearm in violation of federal law. The executive members of the Union discussed the need to raise their concerns regarding Defendant GASCON with the Transportation Security Administration (the "TSA") and the Department of Homeland Security on multiple occasions.

2.      After those meetings and after an investigator at the Office of the District Attorney contacted the TSA regarding Defendant GEORGE GASCON, Defendants engaged in pattern of retaliation and harassment meant to punish any and all personnel who had discussed and/or raised allegations of impropriety by the District Attorney. Plaintiff, an investigator in good standing, was terminated by Defendants in retaliation for his participation in the Union and Defendants' belief that Plaintiff had either been a whistleblower or had aided a whistleblower. Not content only to terminate Plaintiff, Defendants went further, sullying Plaintiff's reputation by accusing him of having *Brady* issues in an effort to destroy his career – a move that not only impacted Plaintiff personally and financially, but that also put San Franciscans at risk given that Plaintiff's work on homicide cases became tainted thereafter and at least one case against a murder suspect was dropped by the Office of the District Attorney as a result thereof.

# II. JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) as the controversy arises under "the constitution, laws or treaties of the United States."

4.      This Court has supplemental jurisdiction over Plaintiffs California state law claims pursuant to 28 U.S.C. § 1367.

# III. VENUE

5.      Venue is proper in the Northern District of California pursuant to 28 U.S.C §

1391(b) because the acts, events or omissions giving rise to this action occurred in this District. This action is also brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, Title VII of the Civil Rights Act of 1964, and the First Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). This Court has further jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367 as those claims form part of the same case and controversy under Article III of the United States Constitution.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred in the County of San Francisco, which is located in this district.

## IV. PARTIES

7.      At all times material to this Complaint, Plaintiff HENRY G. MCKENZIE ("MCKENZIE") was and is a resident of the County of Sonoma in the State of California. Between 2010 through 2017, Plaintiff MCKENZIE was an investigator and then senior investigator in the Office of the District Attorney for the CITY AND COUNTY OF SAN FRANCISCO.

8.      Plaintiff is informed and believes that Defendant CITY AND COUNTY OF SAN FRANCISCO is a public entity ("CCSF").

9.      Defendant GEORGE GASCON is an individual employed by Defendant CITY AND COUNTY OF SAN FRANCISCO.  Plaintiff is informed and believes that Defendant GASCON is a resident of the City and County of San Francisco in the State of California.  At all times relevant to this Complaint, GASCON was the District Attorney for the CITY AND COUNTY OF SAN FRANCISCO and plaintiff's supervisor with the authority to alter the plaintiffs' employment status and working conditions.

10.     Defendant JERRY RODRIGUEZ is an individual employed by Defendant CITY AND COUNTY OF SAN FRANCISCO.  Plaintiff is informed and believes that

Defendant RODRIGUEZ is a resident of the State of California.  At all times relevant to this Complaint, RODRIGUEZ was the Chief of Investigations for the CITY AND COUNTY OF SAN FRANCISCO and plaintiff's supervisor with the authority to alter the plaintiffs' employment status and working conditions.

11.     Defendant DAVID CREW is an individual employed by Defendant CITY AND COUNTY OF SAN FRANCISCO.  Plaintiff is informed and believes that Defendant CREW is a resident of the State of California.  At all times relevant to this Complaint, CREW was the Captain of Investigations for the CITY AND COUNTY OF SAN FRANCISCO and plaintiff's supervisor with the authority to alter the plaintiffs' employment status and working conditions.

12.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 to 10, inclusive, and therefore sues those Defendants by such fictitious names.  Plaintiff will amend the Complaint to allege their true names and capacities when ascertained.

13.     Plaintiff is informed and believes, and thereon alleges, that Defendants and each of them are responsible under the law in some manner for the unlawful actions and unlawful practices complained of herein.

14.     Plaintiff is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein, each Defendant sued (both named and DOE Defendants) was the successor in interest, predecessor in interest, agent, servant, employer, joint-employer, joint venture, contractor, contractee, partner, division owner, co-owner, subsidiary, division, alias, and/or alter ego of each of the remaining defendants and was, at all times, acting within the purpose and scope of such agency, servitude, employment, contract, ownership, subsidiary, alias and/or alter ego and with the authority consent, approval, control, influence and ratification of each remaining Defendants sued herein.

15.     Plaintiff is informed and believes, and thereon allege, that each and all of the acts and omissions alleged herein were performed by, and/or are attributed to, all Defendants, each acting as agents, employees, and/or co-conspirators, and/or under the direction and

control, of each of the other Defendants; and that said acts and failures to act were within the course and scope of said agency, employment, conspiracy and/or direction and control.

16.     Defendants, and each of them, were at all times an "employer" within the meaning of Title VII (42 U.S.C. § 2000e(b)) and the Fair Employment and Housing Act (Cal. Gov. §12926(d).)  Therefore, Defendants were prohibited from engaging in acts of discrimination, harassment and/or retaliation against employees based on age and sexual orientation.  Defendants are further required to take all reasonable steps necessary to prevent discrimination and harassment from occurring, including taking immediate and appropriate corrective action in response to unlawful conduct.

17.     Defendants, and each of them, were acting under color of law at all times as it pertains to the matters contained in this Complaint.

18.     The unlawful employment practices complained of herein occurred within the County of San Francisco, State of California.

### V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

19.     On October 30, 2017 Defendants terminated Plaintiff MCKENZIE.

20.     Plaintiff MCKENZIE timely requested an administrative review of his termination by the Office of the District Attorney pursuant to the Public Safety Officers Procedural Bill of Rights Act (the "POBRA") and, on December 6, 2017, Plaintiff filed a pre-hearing brief stating, among other things, that he had been terminated in violation of "[p]ublic policy" as a result of exercising his "First Amendment rights and for providing information that is protected by the Common Interest Privilege (as well as Cal. Civ. Code § 47(c)), and in violation of Labor Code § 1102.5(b)."

21.     On or about February 19, 2018, following the administrative review by the Office of the District Attorney, Plaintiff's termination was upheld.

22.     Thereafter, on or about April 20, 2018, Plaintiff timely filed a Government Tort Claim alleging violation of public policy, violation of Title VII of the Civil Rights Act, the Fair Employment and Housing Act, and several other state causes of action against the Defendants.

23.     On or about May 25, 2018, Defendant CITY AND COUNTY OF SAN FRANCISCO denied Plaintiff's Government Tort Claim.

24.     Thereafter, Plaintiff filed a claim of discrimination with California Fair Employment and Housing Commission (Case No. 201808-03217813) on or about August 13, 2018 and received a right to sue notice on the same date.  Plaintiff cross-filed the claim with the Equal Employment Opportunity Commission ("EEOC") and requested a right to sue on August 24, 2018 (EEOC Charge No. 550201801763). The EEOC referred the matter to the Department of Justice (the "DOJ"). The DOJ issued a right to sue notice on or about November 19, 2018.

25.     Plaintiff is informed and believes that, to the extent that administrative exhaustion is necessary, he has satisfied all private, administrative and judicial prerequisites to the institution of this action.

26.     This action is not preempted by the California Workers' Compensation Act because civil rights violations, Whistleblower-statute violations, and discrimination, harassment, failure to investigate and retaliation are not risks or conditions of employment under the California Workers' Compensation Act.

## VI. CONTINUING VIOLATIONS/EQUITABLE TOLLING

27.     The wrongful acts and omissions giving rise to the Defendants' liability in this action commenced in or about summer/spring 2017 and are "continuing" in nature to the present time.  At all times, Plaintiff endeavored to resolve his disputes through an internal grievance/administrative review process directly with Defendant CITY AND COUNTY OF SAN FRANCISCO. Accordingly, Plaintiff asserts the doctrine of "equitable tolling" on all his claims during the period that he was endeavoring to resolve his disputes internally.

///

///

///

## SUBSTANTIAL MOTIVATING REASONS

28.     The unlawful actions alleged directed against the Defendants as alleged here herein were substantial factors motivating the adverse employment decisions directed against Plaintiff MCKENZIE up to and including his termination.

## VII. FACTUAL DISCUSSION

### A. THE WHISTLE BLOWING

29.     Defendant CITY AND COUNTY OF SAN FRANCISCO hired Plaintiff MCKENZIE as an Investigator for the Office of the District Attorney's Bureau of Investigation in 2010. At the time, current United States Senator Kamala Harris was San Francisco's District Attorney.

30.     On or about 2011, the Mayor of the City and County of San Francisco appointed Defendant GASCON to fill the District Attorney position following Senator Harris's election to Attorney General for the State of California.

31.     In his capacity as investigator, Plaintiff MCKENZIE performed investigative work in the most difficult and complex criminal investigations under the jurisdiction of the District Attorney's Office – the vast majority of which dealt with homicides.

32.     Within a short time, frame, on or about 2011, Plaintiff MCKENZIE was promoted to Senior District Attorney Investigator. In that capacity, Plaintiff MCKENZIE continued to perform investigative work and was tasked with supervisorial responsibilities, including, but not limited to, becoming a working supervisor in difficult field investigations; assisting in training lower level investigators and other members of the District Attorney's staff; and directing subordinate investigators in the field.

33.     Because Plaintiff MCKENZIE was a first-level supervisor within the Office of the District Attorney, between 2011 and 2017, Defendant CITY AND COUNTY OF SAN FRANCISCO sent Plaintiff MCKENZIE to receive further supervisory training at (i) the POST Supervisorial School in California, and (ii) the Sherman Block Supervisory Leadership

Institute (SBSLI) – a nine-month long training class for "first-level supervisory peace officer[s]." Plaintiff MCKENZIE completed both supervisory trainings.

34.     Between 2010 and 2017, Plaintiff MCKENZIE received numerous honors from Defendant CITY AND COUNTY OF SAN FRANCISCO. During that time, Plaintiff MCKENZIE worked on hundreds of cases and helped incarcerate dozens – if not hundreds – of criminals, making the streets of San Francisco safer for its residents and visitors.

35.     Plaintiff MCKENZIE developed a strong reputation within the Office of the District Attorney of being a hard working, committed, and excellent senior district attorney investigator. Most precious to Plaintiff McKenzie, personally and professionally, was his reputation for honesty and integrity.

36.     On or around 2013, Plaintiff was elected by fellow Union members to be a member-at-large for the San Francisco District Attorney's Office Investigators Association – the union equivalent for District Attorney investigators. The Union, which would work with the San Francisco Police Officers Association (the "SF POA") on occasion, had a seven-member governing body, comprised of a Union president, vice president, treasurer, secretary, and three members-at-large. The Union's governing body would meet during non-work hours to discuss Union business including lobbying efforts (e.g., to try to obtain civil service protection for investigators), working conditions for investigators, and any concerns regarding the Office of the District Attorney.

37.     Starting in late 2016/early 2017, the governing body discussed allegations that the District Attorney, Defendant GASCON, was committing felonies when traveling while armed in violation of federal law on several occasions. The Union's governing body, including Plaintiff, discussed their legal obligation to report these potential crimes to the United State of America transportation Security Administration  and/or the Department of Homeland Security and/or other federal law enforcement agencies.

38.     Upon information and belief, by 2017 Defendants were aware that the Union's governing body, including Plaintiff, was discussion potential illegal conduct by Defendant Gascon and his the other Defendant and that they were considering reporting Defendants'

perceived unlawful conduct (especially by Defendant GASCON) to outside government agencies (i.e., "blowing the whistle on behavior they believed to be criminal.

39.     Around the same time in spring 2017, and on information an belief, an investigator at the District Attorney's Office contacted federal authorities to blow the whistle on Defendant GASCON. Upon information and belief, the investigator informed the TSA that Defendant GASCON had been unlawfully traveling while armed for years – a violation of federal law, which requires peace officers traveling while armed to state they are doing so for good reason under penalty of perjury. Upon information and belief, Defendant GASCON, while serving as District Attorney, was not an active peace officer and had no need to travel while armed.

40.     Upon information and belief, federal authorities have launched a criminal investigation into Defendant GASCON regarding the investigator's allegations of unlawful travel practices, which investigation is still ongoing as of the writing of this Complaint.

41.     Upon information and belief, weeks after the investigator blew the whistle on Defendant GASCON with the TSA, an unknown person also began to circulate anonymous letters within the Office of the District Attorney that, among many other things, stated that Defendant GASCON had violated federal law when traveling armed.

42.     Upon information and belief, Defendants know the identity of the investigator that contacted the TSA regarding Defendant GASCON. Plaintiff will refer to that investigator as Investigator Doe.

43.     Upon information and belief, Defendants were aware that the Union's governing body, including Plaintiff, had also met to discuss the need to blow the whistle on Defendant GASCON and would likely blow the whistle on Defendant GASCON.

44.     Upon information and belief, Defendants believe that Plaintiff was the author of the anonymous whistleblower letters that appeared following Investigator Doe's report to the TSA.

**B. DEFENDANT GASCON'S AGENTS AND THE ESCALATION OF A DISCRIMINATORY AND HOSTILE WORK ENVIRONMENT**

45.     Around the same time that Defendant GASCON's alleged unlawful travel with a concealed weapon was being considered by the Union in late 2016, Defendant GASCON, a former officer and director at the Los Angeles Police Department, hired a childhood friend and former Los Angeles Police Department captain, Defendant JERRY RODGRIGUEZ, to become a lieutenant at the Bureau of Investigations.

46.     Plaintiff MCKENZIE recalls that one of the first things that Defendant RODRIGUEZ told him upon meeting him was, in connection with RODRIGUEZ's relationship to GASCON, "I would do anything for that man." At the time, in late 2016, Plaintiff MCKENZIE considered that comment to be very odd.

47.     Within a short time of being brought into the Office of the District Attorney, on or about March 2017, Defendant GASCON promoted Defendant RODRIGUEZ to become the Chief of the Bureau of Investigations.

48.     At the same time, Defendant GASCON promoted Defendant DAVID CREW to Captain of the Bureau of Investigations. Defendant CREW was known also to be very loyal to Defendant GASCON.

49.     Shortly after the promotions of Defendants RODRIGUEZ and CREW, it became apparent that Defendant GASCON was "cleaning house" at the Office of the District Attorney. Normally, that would be considered a good thing if it was to clear bad actions. But in this case, it was apparent that Defendant GASCON was using the shield of "good intent" for his own political purposes; to cull out those who did not show allegiance to Defendant GASCON and who were not willing to cover up his misdeed and apparent illegal actions.

50.     Over the course of the next several months, nearly half to the investigative department was wiped out; approximately 14 staff members were either terminated or forced to resign under intense pressure within a five-month span. All the separated employees were either over 40 years old and/or were members of the Union – persons who knew of the allegations concerning Defendant GASCON's violations of federal law.

51.     Typically, the separated employees were either reprimanded or pressured by Defendants RODRIGUEZ and CREW at the behest of Defendant GASCON. For example, of the Union's seven-member governing body, five of the executive members were either terminated or reprimanded in some way in the following months, with the District Attorney, by and through Defendant RODRIGUEZ, brining an Internal Affairs investigation against the Union president, for instance.

52.     Over the course of the next several months, after Investigator Doe reported Defendant GASCON to the TSA and that other staff-persons were believed to either be leaking said information to the press and/or federal authorities, a cloud descended on many of the upper managers at the Office of the District Attorney.

53.     On September 5, 2017, Defendant GASCON engaged in the most chilling and egregious act of bulling and intimidation.  While addressing the entire staff for the District Attorney's Bureau of Investigations department at a training day at the shooting range at Lake Merced, Defendant GASCON threatened the staff that he perceived there was "cancer" growing in the Bureau of Investigations and he was going to cut it out. In his rant, he compared this "cancer" to incidences of corruption her was aware of while serving Los Angeles Police Department such contract for hire killings. Defendant GASCON threatened that if anyone was going to talk to the Matier & Ross, "they better make sure they had their facts straight" and that he (defendant Gascon) would "be around a lot longer than anyone else" at the Bureau.

54.     Plaintiff MCKENZIE understood the references made by Defendant GASCON on September 5, 2017 meeting referred to the anonymous whistleblowing letters that had been circulating the department given that the whistleblowing letters referenced two San Francisco Chronicle reporters – Phil Matier and Andy Ross.

55.     Upon information and belief, Defendant GASCON believed Plaintiff to be the author of these whistleblower letters.

56.     The very next day, on September 6, 2017, Plaintiff was called into Defendant CREW's office. Plaintiff was informed that he was being placed on administrative leave and that an Internal Affairs investigation was pending. Given the time of this action and the

comments made by Defendant GASCON, this action defamed Plaintiff professionally as it lumped him in with the people Defendant GASCON referred to as the "cancer" in the Bureau of Investigations who were engaging in illegal conduct. Specifically, Plaintiff was informed that he was being placed on leave for providing false information to a federal agency. That allegation against Plaintiff itself was false.

**C. The Purported false information**

57.      Plaintiff MCKENZIE supervised Investigator Doe while serving as a senior district attorney investigator within the District Attorney's Office. Unbeknownst to Plaintiff, Investigator Doe contacted the TSA to report Defendant GASCON's unlawful travel on or about spring 2017.

58.      In early summer 2017, Defendant GASCON terminated Investigator Doe.

59.      Plaintiff was not privy to the facts leading to the termination.

60.      Because Plaintiff MCKENZIE had been Investigator Doe's supervisor, on or about August 2017, Investigator Doe reached out to Plaintiff MCKENZIE and requested a personal reference letter from Plaintiff given that Investigator Doe was applying for a federal job.

61.      Plaintiff MCKENZIE agreed to provide a personal reference letter. On or about August 2017, Plaintiff received a form – INV FORM 41 – from the federal government addressed to Plaintiff in his personal capacity and requesting him to fill the form out on behalf of Investigator Doe. The form contained six multiple-choice questions, which were supposed to be answered out by filling in bubbles. One of the questions asked if the information on the form, stating that Plaintiff MCKENZIE had been Investigator Doe's "supervisor" was correct. Plaintiff MCKENZIE bubbled in "Yes."

62.      Another question asked if Investigator Doe was eligible for rehire. Plaintiff MCKENZIE, relying solely on the facts that he knew, opined and bubbled in the box for "Yes." Nonetheless, Plaintiff also stated on the reference form that Investigator Doe had been terminated. Plaintiff MCKENZIE expected that the hiring agency would reach out to him with

any questions. Plaintiff MCKENZIE filled out the personal reference form truthfully and to the best of his knowledge.

63.     Unbeknownst to Plaintiff, Defendants obtained a copy of the reference letter that Plaintiff had filled out on behalf of Investigator Doe in his personal capacity. Believing that Plaintiff was the anonymous whistleblower and believing that Plaintiff was knowingly assisting Investigator Doe, the TSA whistleblower, Defendants retaliated against Plaintiff. Specifically, Defendants contended that Plaintiff had intentionally misled federal authorities because (i) Plaintiff was not Investigator Doe's supervisor, and (ii) Investigator Doe was not eligible for rehire. Based on those allegations, Defendant GASCON, acting by and through Defendants CREW and RODRIGUEZ, terminated Plaintiff from the District Attorney's on October 30, 2017.

64.     Plaintiff appealed his termination and provided evidence showing that (i) he was Investigator Doe's supervisor, and (ii) he had not in any way misled federal authorities by submitting a reference letter. (In fact, the federal agency in question ultimately offered Investigator Doe a position.) Despite such showing, Defendants upheld Plaintiff's termination.

65.     During the course of the review, Plaintiff also informed/blew the whistle on Defendants by informing them that they had violated Investigator Doe's right to privacy by sharing with Plaintiff and his counsel the rationale for the decision to terminate Investigator Doe. In fact, Plaintiff informed Defendants that such revelation was a crime – a violation of Penal Code § 832.7.

66.     Upon information and belief, the purported reason for Plaintiff's termination was pretextual. Plaintiff was fired in retaliation for his perceived whistleblowing (and support thereof) and to chill his First Amendment rights of free speech. In fact, several Defendants have engaged in very serious and even unlawful conduct and have faced no disciplinary action.

67.     To exacerbate matters, following Plaintiff's termination, Defendants informed several third parties, following Plaintiff's termination on October 30, 2017 through early 2018, that Plaintiff was being investigated for so-called *Brady* issues – concerns about Plaintiff's honesty that have to be disclosed to defense attorneys in criminal prosecutions. As a result of

said statements, which were defamatory and malicious, the District Attorney's Office refused to call Plaintiff to be witness on at least one murder trial for which Plaintiff had conducted the investigation. As a result thereof, a suspected murderer was let go from prison and the case against him was dismissed.

68.     Plaintiff has no *Brady* issues; instead, Defendants have made such statements in a further effort to retaliate and injure Plaintiff. Said efforts have been successful given that Plaintiff sought other employment following his termination and was rejected for employment on several occasion due to Defendants' statements. Plaintiff continues to suffer injuries arising from Defendants' tortious actions in violation of the state law and the United States Constitution.

## VIII. CAUSES OF ACTION

## FIRST CLAIM

### VIOLATION OF CALIFORNIA LABOR CODE § 1102.5; 6310

### (Against All Defendants and Does 1 to 10)

69.     Plaintiff incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint. As a separate and distinct cause of action for relief, Plaintiff complains against Defendants CCSF and Does 1 through 20 only as follows:

70.     Cal. Labor Code § 1102.5(b) prevents an employer from retaliating against an employee for "disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation" relating to a violation of state and/or federal law.

71.     Cal. Labor Code § 6310. Provides:

 (a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following:

(1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative.

(2) Instituted or caused to be instituted any proceeding under or relating to his or her rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of himself, herself, or others of any rights afforded him or her.

(3) Participated in an occupational health and safety committee established pursuant to Section 6401.7.

(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

72.     As herein above alleged, Plaintiff was subjected retaliation for participating in Union meetings discussing federal law violations, for writing a personal reference letter to a whistleblower, for informing Defendants that they had violated state penal law, and for being believed to have been a whistleblower or future whistleblower.

73.     Defendants CCSF and, acting through its various employees, including the other Defendants retaliated against Plaintiff, as hereinabove alleged, including a continuing,

connected series of retaliatory acts that continue to this date including terminating Plaintiff. Such actions by Defendants CCSF violated Labor Code §§ 1102.5 and 6310 in that they constituted retaliation.

74.     As a direct, foreseeable and legal result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial damages including losses in earnings, seniority, work credits, retirement and other employment benefits in an amount to be proven at trial.

75.     As a direct, foreseeable and legal result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental, emotional distress and discomfort, all to Plaintiff Faith's detriment in an amount to be proven at trial.

76.     By reason of Defendants' unlawful conduct, and in order to enforce his important rights, Plaintiff has incurred and will incur legal expenses including attorneys' fees and costs to remedy the wrongs perpetrated by Defendants and each of them.  Plaintiff is therefore entitled to reasonable attorneys' fees and costs as a matter of law pursuant to, inter alia California Code of Civil Procedure § 1021.5, California Labors Code §§ 1102.5 and 6310; Government Code § 12900 et seq. and California Labor Code § 2968. Additionally, Plaintiff is entitled to punitive damages as to the individual defendants.

WHEREFORE, Plaintiff requests relief as herein set forth in the Prayer.


**SECOND CLAIM FOR RELIEF**

**CIVIL RIGHTS VIOLATION -- (42 U.S.C. § 1983**

**(Against all Defendants and Does 1-10)**

77.     Plaintiff incorporates by reference as though fully set forth herein, each and every allegation set forth above in this Complaint.  As a separate and distinct claim for relief, Plaintiff complains against all Defendants as follows:

78.     Plaintiff alleges that Defendants, including Does 1-10, acting under color of law, jointly and/or severally, deprived plaintiff of those rights, privileges and immunities secured by the United States Constitution as incorporated and applied to the states by and through the Fourteenth Amendment: Through the foregoing acts, and each of them, the

Defendants sought to and did retaliate, chill and suppress Plaintiff's exercise of his constitutional right of free speech and did so under color of their authority as law enforcement officers. Defendants' efforts in this regard were also intended to protect Defendant GASCON's federal violations under color.

79.     Plaintiff's targeted speech was done in his capacity as a private citizen, outside his chain of command, and outside work hours;

80.     The subject matter of Plaintiff's speech was not typical of his job duties;

81.     Defendants took adverse employment actions against Plaintiff due to his speech;

82.     Plaintiff's speech was a substantial or motivating factor for the adverse employment action;

83.     As a result of the foregoing, Plaintiff has been damaged economically and noneconomically in an amount unknown to him, but to be proven at time of trial.

84.     By reason of Defendants' unlawful conduct, and in order to enforce his important rights, Plaintiff has incurred and will incur legal expenses including attorneys' fees and costs to remedy the wrongs perpetrated by Defendants and each of them.  Plaintiff is therefore entitled to reasonable attorneys' fees and costs as a matter of law. Additionally, Plaintiff is entitled to punitive damages as to the individual defendants.

## THIRD CLAIM FOR RELIEF

### DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF TITLE VII AND THE FEHA (AGAINST CCSF)

85.     Plaintiff incorporates herein by reference the preceding Paragraphs of this Complaint as fully set forth herein. This cause of action is alleged against Defendant CCSF.

86.     Title VII and the FEHA prohibit an employer from discriminating against an employee on the basis of age.  Specifically the Title VII and the FEHA provide that it is unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment," based on the individual's age.

87.     Defendant CCSF's actions negatively affected the terms and conditions of Plaintiff's employment.  A substantial motivating factor for Defendant's unlawful actions was discrimination based on Plaintiff age.

88.     Plaintiff sustained an adverse employment action by Defendant as heretofore alleged.

89.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered, embarrassment, loss of dignity, great humiliation, and emotional distress.

90.     As a direct, foreseeable and proximate result of Defendant's acts, Plaintiff has suffered and continues to suffer loss of promotional opportunities, training opportunities, economic losses, lost benefits, and other consequential and foreseeable damages.

91.     By reason of Defendant's unlawful conduct, and to enforce the important right to a discrimination and harassment-free workplace, for Plaintiff and the public at large, Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiffs are therefore entitled to reasonable attorneys' fees and litigation expenses pursuant to 29 U.S.C. § 216(b) and C.C.P. §1021.5 and Government Code §§ 12940(a) and 12965(b).

WHEREFORE, Plaintiffs pray for relief as set forth herein.

## FOURTH CLAIM FOR RELIEF

### FAILURE TO INVESTIGATE AND PREVENT DISCRIMINATION
### VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(K)
### (AGAINST DEFENDANT CCSF )

92.     Plaintiff incorporates herein by reference the preceding Paragraphs of this Complaint as fully set forth herein. This cause of action is alleged against Defendant CCSF.

93.     California Government Code § 12940(k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment from occurring in the workplace.

94.     Defendant violated Government Code §12940 with regard to Plaintiff when Defendant knowingly and recklessly failed to investigate Plaintiff's concerns and complaints

regarding discrimination and retaliation against Plaintiff on the basis of age discrimination. Defendant failed to conduct a meaningful, effective, reasonable and impartial investigation when Plaintiff complained about discriminatory conduct and failed to take reasonable steps necessary to investigate the misconduct and prevent it from occurring and continuing.

95.     Defendant's conduct toward Plaintiff as alleged above, constitutes an unlawful employment practice in violation of California Government Code §12940 *et. seq.*

96.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered loss of employment opportunities, loss of dignity, great humiliation, and emotional injuries and emotional distress.

97.     Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, loss of future earnings and benefits, loss of benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

98.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress.

99.     By reason of Defendant's unlawful conduct, and in order to enforce the important right to a discrimination and harassment-free workplace, both for Plaintiff and the public at large, Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is therefore entitled to reasonable attorneys' fees and litigation expenses per C.C.P. §1021.5 and Cal. Gov. Code §12965(b).

WHEREFORE, Plaintiffs pray for relief as set forth herein.

## FIFTH CLAIM FOR RELIEF

### DEFAMATION

### (AGAINST ALL DEFENDANTS)

100.    Plaintiff incorporates herein by reference the preceding Paragraphs of this Complaint as fully set forth herein

101.     Upon information and belief, Defendants GASCON, CREW and RODRIGUEZ, and each of them, made one or more statements to persons other than Plaintiff.

102.     Such persons reasonably understood that Defendants' statements were about Plaintiff.

103.     Specifically, Defendants made false statements to such persons concerning Plaintiff's termination and the existence of *Brady* issues.

104.     Defendants did not use reasonable care to determine the trust or falsity of such statements, but, upon information and belief, knew said statements to be false.

105.     Defendants' statements have proximately harmed Plaintiff and his career and reputation.

106.     Defendants' conduct, as described above was willful, malicious, oppressive, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof for damages caused by the individual defendnants' conduct.

## IX. DAMAGES

107.     As a legal result of the conduct by Defendants of which Plaintiff complains, Plaintiff suffered and continues to suffer substantial losses in earnings, service credit, retirement benefits, health benefits and other employee benefits.  Plaintiff will seek leave to amend this Complaint to state the amount or will proceed according to proof at trial.

108.     Plaintiff suffered general emotional distress as a legal result of the conduct by Defendants of which Plaintiff complain.

109.     At all material times, Defendants, and each of them, knew that Plaintiff depended on his wages and other employee benefits as a source of earned income.  At all material times, Defendants were in a position of power over Plaintiff, with the potential to abuse that power.

///

///

## X. PRAYER FOR RELIEF

Wherefore Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. Reinstatement in full with full back pay, benefits, service credits and retirement contributions;

2. For a money judgment representing compensatory damages including medical expenses, both past and future, lost wages, earnings, lost retirement benefits and other employee benefits, and all other sums of money, and all other special and general damages according to proof, together with interest on these amounts, according to proof;

2. For an award of money judgment for emotional distress, according to proof;

3. For prejudgment and post-judgment interest;

4. For declaratory and affirmative and injunctive relief as follows:

(a) for an injunction restraining Defendants, and each of them, from continuing or maintaining any policy, practice, custom or usage which discriminates against any employee in violation of FEHA, Cal. Gov. Code §§ 12900 *et seq*.;

(b) for an injunction restraining Defendants, and each of them, along with their supervising employees, agents and all those subject to its control or acting in concert with it from causing, encouraging, condoning or permitting the practice of discrimination, retaliation or willful violations of FEHA, Cal. Gov. Code §§ 12900 *et seq*.;

(c) for affirmative relief requiring Defendants, and each of them, to develop clear and effective policies and procedures for employees complaining of retaliation or violations of FEHA, Cal. Gov. Code §§ 12900 *et seq*., so they may have their complaints promptly and thoroughly investigated (by a neutral fact finder) and informal as well as formal processes for hearing, adjudication and appeal of the complaints; and,

5.      For attorney fees and costs including those allowed pursuant to federal law as wells as C.C.P. § 1021.5, Gov. Code § 12965(b), and 29 U.S.C. § 216(b).

6.      For any other relief that is just and proper.

7.      For punitive damages.

Dated:  November 24, 2018          LAW OFFICE OF FULVIO F. CAJINA

By:     /s/_____
                FULVIO F. CAJINA
                Attorney for Plaintiff

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial on all causes of action and claims to which he has a right to jury trial.

Dated:  November 24, 2018          LAW OFFICE OF FULVIO F. CAJINA

By:     /s/_____
                FULVIO F. CAJINA
                Attorney for Plaintiff